NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

MICHAEL LEE RIEHLE, *Petitioner*.

No. 1 CA-CR 25-0553 PRPC

FILED 08-07-2027

Petition for Review from the Superior Court in Mohave County
No. CR2024-00094
The Honorable Douglas Camacho, Judge

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Mohave County Attorney's Office, Kingman
By Jacob Cote
*Counsel for Respondent*

John Trebon, P.C., Flagstaff
By John Trebon
*Counsel for Petitioner*

---

**MEMORANDUM DECISION**

Presiding Judge Daniel J. Kiley, Judge D. Steven Williams, and Judge Cynthia J. Bailey delivered the Court's decision.

---

**PER CURIAM**:

¶1        Michael Lee Riehle seeks review of the superior court's dismissal of his petition for post-conviction relief ("PCR") filed under Arizona Rule of Criminal Procedure ("Rule") 32.1. We grant review but deny relief.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2        The facts and trial procedure are outlined in this court's prior opinion.

On a Friday morning in October 2023, Riehle threatened two victims with a rifle in separate incidents outside his home. The first incident occurred when a woman was parked outside Riehle's home, waiting for a friend. Riehle yelled at her and fired three shots in her direction. She fled unharmed and immediately called the police. Soon after, Riehle pointed his rifle at a second victim as he drove past Riehle's property. This victim also called the police.

Police arrested Riehle at the scene. Officers described him as "freaking out" and unintelligible. He said he fired at an intruder in self-defense, but a protective sweep of the home revealed no one inside. A later search of Riehle's home uncovered weapons and drug evidence. Officers recovered a rifle, a pistol, spent shell casings, ammunition and a zip lock bag containing a white crystal substance resembling methamphetamine. Next to the bag was a pen cap and burned aluminum foil covered in melted methamphetamine.

A three-day jury trial was held. The jury heard testimony from the police officer who collected the drug evidence and the crime scene analyst who tested it. Both identified the white crystal substance as methamphetamine based on their training and experience. The analyst also

administered a Marquis test, which tested positive as amphetamine. The jury found Riehle guilty of two counts of disorderly conduct with a weapon, possession of dangerous drugs and possession of drug paraphernalia. *See* A.R.S. §§ 13-2904(A)(6), -3407 and -3415. The jury also found both victims suffered physical, emotional or financial harm. *See* A.R.S. § 13-701(D)(9).

*State v. Riehle*, 261 Ariz. 567, 570, ¶¶ 4–6 (App. 2026). The superior court sentenced Riehle to concurrent and consecutive sentences totaling three years' incarceration as non-dangerous offenses.

¶3        Both sides appealed. We affirmed Riehle's convictions but vacated and remanded the sentences, holding the superior court erred by concluding that the disorderly conduct with a weapon convictions were non-dangerous offenses without a jury finding. *Id.* at 700, ¶¶ 36–37. Riehle's petition for review is pending before our supreme court. *See State v. Riehle*, No. CR-26-0048-PR (filed Feb. 20, 2026).

¶4        Meanwhile, Riehle petitioned for PCR with the superior court, asserting trial counsel committed ineffective assistance of counsel ("IAC") by failing to: (1) hire an expert to challenge the State's bullet analysis from inside Riehle's residence, (2) consult with Riehle before the trial, (3) inspect Riehle's residence, where the shooting occurred, (4) object to hearsay and other-act evidence, and (5) interview prosecution witnesses before the trial. After reviewing the PCR petition, response, and reply, the court determined that a hearing was warranted.

¶5        The parties presented evidence at a recorded PCR hearing. After the hearing, the superior court found that Riehle had failed to prove his claims and dismissed his PCR petition in a detailed order. Riehle then petitioned this court for review. We have jurisdiction under A.R.S. § 13-4239(C) and Rule 32.16.

## DISCUSSION

¶6        In his petition for review, Riehle reasserts two of his IAC claims, contending trial counsel was ineffective by failing to: (1) investigate or inspect the crime scene, or consult with an expert to analyze it, and (2) object to hearsay and other-act evidence.

¶7        We review the superior court's denial of PCR for an abuse of discretion, *State v. Macias*, 249 Ariz. 335, 339, ¶ 8 (App. 2020), but review the interpretation of the Arizona Rules of Criminal Procedure *de novo*, *State v.*

*Mendoza*, 248 Ariz. 6, 14–15, ¶ 12 (App. 2019). We do not engage in fundamental error review in PCR proceedings. *State v. Smith*, 184 Ariz. 456, 459 (1996) ("Because no court rule provides for fundamental error review of a petition for review to the appellate courts [in a PCR proceeding], such review is no longer required."); *State v. Reed*, 252 Ariz. 236, 239, ¶ 12 (App. 2021) ("Because a PCR petition for review to this court is discretionary, we do not review for fundamental error."). When the superior court commits an error of law or fails to investigate the facts supporting its decision adequately, it constitutes an abuse of discretion. *State v. Pandeli*, 242 Ariz. 175, 180, ¶ 4 (2017). Riehle bears the burden of proving the superior court erred. *Reed*, 252 Ariz. at 238, ¶ 6.

**I.     We presume the superior court correctly ruled on the PCR claims because Riehle failed to include the PCR hearing transcripts in the record on appeal.**

**¶8**          Riehle makes claims concerning the evidence presented at the PCR hearing held on September 17, 2025, and asserts the superior court orally denied some claims at a status conference held on August 13, 2025. Although both hearings were recorded, the transcripts are not part of this court's record.

**¶9**          "It is the defendant's duty, as the party seeking relief, to prepare the record in such a manner as to allow the appellate court to pass upon the questions raised on appeal." *State v. Mendoza*, 181 Ariz. 472, 474 (App. 1995). Thus, it was incumbent on Riehle to ensure that the record contains all necessary transcripts. *See id.* "When matters are not included in the record on appeal, the missing portion of the record is presumed to support the decision of the [superior] court." *Id.*

**¶10**          For PCR review, the Arizona Rules of Criminal Procedure provide the mechanism to ensure the reviewing court can pass upon the questions raised. Rule 32.16(b) reads that "[n]o later than 3 days after a petition or cross-petition for review is filed, the petitioner or cross-petitioner *must* file with the superior court a 'notice of filing.'" (Emphasis added.) The mandatory notice should include the items the clerk must transmit to the appellate court under Rule 32.16(j). If a defendant wishes to include PCR transcripts in the review record, he or she must request production under Rule 32.13(e) ("On a party's request, the court must order the preparation of a certified transcript of the evidentiary hearing.") and designate the transcripts in the mandatory notice of filing.

¶11　　　　Here, there is no "notice of filing" in the superior court record. On December 24, 2025, this court ordered the Mohave County Court Clerk to transmit the record for review. The clerk, under Rule 32.16(j), filed the record on February 9, 2026. Nothing in the clerk's record shows that the transcripts from the two hearings have been filed with the Mohave County Clerk or transferred to this court based on a notice of filing by Riehle. Thus, we presume that the missing transcripts support the superior court's denial of the PCR claims.

**II.　　Riehle failed to show a reasonable probability of a different result even if trial counsel's performance fell below professional standards.**

¶12　　　　Whether Riehle received "ineffective assistance [of counsel] is a mixed question of fact and law," which we review *de novo*. *State v. Denz*, 232 Ariz. 441, 443–44, ¶ 6 (App. 2013) (holding that both the prejudice and performance prongs of an IAC claim are mixed questions of law and fact). So while we defer to the PCR court's factual findings, we review the ultimate legal conclusion *de novo*. *Id.*

¶13　　　　To prevail on an IAC claim, a defendant must prove deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). For the deficient performance component, a defendant must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Hinton v. Alabama*, 571 U.S. 263, 272 (2014) (citation modified). We measure the standard of reasonableness by the "practice[s] and expectations of the legal community." *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010). In so doing, we presume that "counsel's conduct falls within the wide range of reasonable professional assistance" that "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quotation omitted). To overcome this presumption, a defendant must "show counsel's decisions were not tactical in nature, but were instead the result of ineptitude, inexperience or lack of preparation." *Denz*, 232 Ariz. at 444, ¶ 7 (quotation omitted). Courts must make every effort to "eliminate the distorting effects of hindsight" and "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

¶14　　　　If a defendant proves deficient performance, the inquiry shifts to prejudice. *Strickland*, 466 U.S. at 687; *State v. Miller*, 251 Ariz. 99, 102, ¶ 9 (2021). To establish IAC prejudice, a defendant must show a "reasonable probability" that, but for counsel's errors, the result of the proceeding would have been different. *Miller*, 251 Ariz. at 104, ¶ 17. In other words, a

defendant must show that counsel's errors deprived him of a fair trial with a reliable result. *Id.*

**¶15**        IAC is a constitutional violation. *Strickland*, 466 U.S. at 685–86. Once a defendant has shown deficient performance and prejudice, *id.*, the burden shifts to the State to prove, beyond a reasonable doubt, that the violation was harmless, Ariz. R. Crim. P. 32.13. But the "[f]ailure to satisfy either prong of the *Strickland* test is fatal to an [IAC] claim." *State v. Bennett*, 213 Ariz. 562, 567, ¶ 21 (2006). Accordingly, "this Court is not required to address both prongs 'if the defendant makes an insufficient showing on one.'" *Pandeli*, 242 Ariz. at 181, ¶ 6 (quoting *Strickland*, 466 U.S. at 697).

> **A.        Assuming, without deciding, that trial counsel's performance fell short of an objective standard of reasonableness, Riehle fails to show how the lack of an investigation or inspection of his home, nor consultation with an expert, prejudiced him.**

**¶16**        In our *de novo* review of the record, we determine, as did the superior court, that Riehle failed to show IAC prejudice. Riehle maintains that trial counsel failed to hire a crime scene expert to analyze the inside of his home to impeach the State's expert on whether there were bullet holes in the home and which direction the gunshots came from. But the gunshots and casings had little bearing on the crimes—disorderly conduct with a weapon—for which Riehle was convicted.

**¶17**        The first victim, Rosa (a pseudonym), testified that she went to pick up a friend who lived near Riehle. When the friend got in the truck, Rosa drove it into the street. Riehle was yelling at the women and eventually yelled, "[Expletive] you. Get out of here," and shot three times at the truck. Rosa drove away and stopped at a park where she called 9-1-1. Rosa testified that Riehle was on his porch when he fired his gun.

**¶18**        The second victim, Marvin (a pseudonym), testified that he heard three shots near his home. Soon after, Marvin and his son drove past Riehle's home and Riehle fired his gun at them from his porch as they drove by. They proceeded to the same park as Rosa, and also called 9-1-1.

**¶19**        Both victims maintained that Riehle was outside of his home when he fired toward them. Consistent with that testimony, crime scene investigators found four shell casings on the porch, or just off the porch. Notably, the two victims were not friends, though they both retreated to the

same park near Riehle's home before calling 9-1-1. The superior court noted:

> [T]he allegations made by the victims as shown by their testimony concerned the Defendant's conduct that occurred *outside* the residence. While the State did present evidence regarding bullet holes within the residence, this evidence was only ancillary to the actual charges in the case.

(Emphasis in original.) Given the victims' accounts, the lack of evidence impeaching the State's crime scene investigation inside Riehle's home does not rise to the level of IAC prejudice. Therefore, the superior court did not err by rejecting Riehle's claim.

### B. Assuming, without deciding, that trial counsel's performance fell short of an objective standard of reasonableness, counsel's failure to object to the admission of alleged hearsay evidence did not prejudice Riehle.

¶20 A Mohave County Sheriff's Office detective testified that the office received a call reporting that a male subject at Riehle's residence was firing a gun at "basically anything that moved outside of the residence." Another detective confirmed that the sheriff's office received a call that someone "was shooting outside of his residence at anything that moves." Trial counsel did not object to the testimony.

¶21 At trial, the State presented evidence that Riehle admitted to shooting his gun 19 times on the day in question but maintained he did so while inside his home. Both victims testified that they called 9-1-1 to report the shootings. And the detectives' explained why they went to the scene armed and forcefully took Riehle into custody. Viewed in context, this testimonial evidence appears to be non-hearsay. Ariz. R. Evid. 801(c), (d) (defining out-of-court statements as hearsay when offered for "the truth of the matter asserted"); *see State v. Rivera*, 139 Ariz. 409, 413–14 (1984) (explaining that extrajudicial statements presented to explain a hearer's conduct may be admissible when offered to show the "effect on one whose conduct is in issue," and if they are not being offered to prove the matter asserted in the statement.) But even if it constitutes hearsay, its admission was harmless beyond a reasonable doubt. *See State v. Lundstrom*, 161 Ariz. 141, 150 n.11 (1989) (concluding error is harmless if the court can say beyond a reasonable doubt that the error did not contribute to or affect the verdict). The trial evidence supported the detectives' testimony that they

received calls reporting that Riehle was shooting indiscriminately. Therefore, the superior court did not err by denying Riehle's claim.

> ## C. Assuming, without deciding, that trial counsel's performance fell short of an objective standard of reasonableness, Riehle failed to prove prejudice for the admission of alleged prior act evidence.

¶22 Riehle alleges that the State offered evidence in violation of Arizona Rule of Evidence ("Evidence Rule") 404(b) without objection, which constituted IAC. We address the potential prejudice for each claim.

> ### 1. Marvin's statement about how he knew Riehle.

¶23 At trial, Marvin had trouble identifying Riehle as the shooter. Trial counsel followed up with Marvin on cross-examination and asked whether Marvin knew Riehle. Marvin responded:

> Houses near us. Some young kids, young men hang around there to make noise, disturbance, and I feel that he's the one of them that has hung out around with them.

On redirect examination, the State followed up on trial counsel's questions.

> [State]. Had you ever seen [Riehle] around before the day of the incident?
>
> [Marvin]. I think so. He hangs around with those guys.
>
> Q. Where do those guys usually hang around?
>
> A. It's two houses on the side of my neighbors, and they're always making noise in the middle of the night, and they're outside with lamps.
>
> Q. Okay. Can you -- do you remember ever seeing these guys?
>
> A. Yes.
>
> Q. What do they generally look like?
>
> A. They're not good guys.
>
> Q. What did they look like, though?
>
> A. Like if they were kids from the streets.

Q. Okay. Do you remember –

A. Like homeless.

Trial counsel did not object.

**¶24**        Generally, evidence of a person's character or a trait of character is not admissible to prove that he or she acted in conformity on a particular occasion. Ariz. R. Evid. 404(a). And under Evidence Rule 404(b), specific acts may not prove character. Here, the evidence presented was not that Riehle was "homeless" or a dangerous person, but that Marvin may have seen him hanging around such individuals in his neighborhood. The evidence was perhaps admissible to show Marvin's bias against Riehle, based on his belief that Riehle was hanging out with these young men. Regardless, it was not character evidence proving that Riehle acted in conformity on that day. Furthermore, even if we assume the evidence violated Evidence Rule 404(b), its admission was harmless beyond a reasonable doubt.

### 2. Rosa's testimony that she had to secure a protective order.

**¶25**        At trial, Rosa testified that she knew Riehle as a neighbor. On direct examination, she volunteered that she previously obtained a "harassment order" against Riehle, but explained "everything was good for a few years, and then things kind of went crazy on this one day." On cross-examination, trial counsel asked Rosa why she got the protective order.

> He used to ride his quad on really windy days when wind was blowing our direction towards our house, and he would do donuts and laugh and try to irritate us, and we finally got tired of it, so we got video of it, and we ended up getting a harassment order against him.

Rosa confirmed that the order expired a "couple of years prior" and she had had no further trouble with Riehle until this incident.

**¶26**        The superior court, in addressing this testimony, noted:

> [Trial counsel] testified that prior to the trial, [she] had spoken to the attorney from her office who had handled the preliminary hearing. That attorney informed [trial counsel] that the State's witnesses, including [Rosa], were not especially credible witnesses. At the evidentiary hearing,

[trial counsel] testified that she did not object because, in her opinion, the fact that [Rosa] obtained a harassment order tended to show that she was prejudiced against [Riehle]. [Trial counsel] also testified that [Rosa] did not come across very well while testifying. [Trial counsel] testified that [Rosa] appeared angry and agitated against [Riehle]. [Trial counsel] further testified that [Rosa] was not very consistent. [Trial counsel] testified that this tended to show that [Rosa] "had it out for" [Riehle]. [Trial counsel] also said that she felt that allowing this testimony might weaken [Rosa's] credibility.

During closing arguments, [trial counsel] argued that the injunction against [Riehle] was "still clearly important to [Rosa], and it might be coloring what she's saying later." [Trial counsel] argued that [Rosa] was still holding something against [Riehle]. She argued that [Rosa] was clearly upset with [Riehle]. [Trial counsel] argued that the jury should consider the prior injunction in evaluating the testimony of [Rosa]. [Trial counsel] also suggested that [Rosa's] discussion of the injunction might also be evidence that [Rosa] was confusing the events that occurred on October 20, 2023, with those of a prior incident.

This Court listened to [Rosa's] testimony during the trial. The Court noted that [Rosa] was non-responsive at times and rambled off on tangents. While testifying, [Rosa's] voice was confrontational, and she acted somewhat aggressively towards [Riehle].

The court found the evidence admissible under Evidence Rules 401 and 403 to show Rosa's prejudice against Riehle.

¶27 Even if we assume that trial counsel should have objected to Rosa's testimony under Evidence Rule 404(b) and the evidence should have been excluded, its admission was harmless beyond a reasonable doubt. Trial counsel used the evidence to her advantage to attack Rosa's credibility, and the overwhelming evidence of Riehle's guilt rendered any error harmless.

**CONCLUSION**

¶28        We grant review but deny relief.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:              JR